A92A0889. CHIP KASSINGER, INC. v. STEIMER et al.
(422 SE2d 241)

BEASLEY, Judge.

This is another suit involving the construction of the Steimer house. See *Steimer v. Northside Bldg. Supply*, 202 Ga. App. 843 (415 SE2d 688) (1992).

In March of 1987, Thomas and Norma Steimer, as purchasers, entered into a written contract with Chip Kassinger, Inc., as seller, for the construction of a house for the Steimers by Kassinger. Plans and specifications were attached. For a purchase price of $320,000, Kassinger, through its president E. T. "Chip" Kassinger, agreed to sell the Steimers the house and the lot. The Steimers paid Kassinger $10,000 shortly thereafter. Later, the same parties executed a new written contract for construction and sale of the house for a purchase price of $319,824. It was dated November 1, 1987, and signed by the Steimers as the purchasers. Norma Steimer, a licensed real estate agent, also signed as the associated sales person of ReMax, shown as the selling broker. The house was constructed, and the contract was closed on the new written contract in June of 1988, with an attorney signing for Kassinger in the absence of E. T. (Chip) Kassinger.

In April 1990, Seitz Landscaping sued Chip Kassinger, Inc. and the Steimers, alleging that it did landscaping work at the Steimers' residence in May of 1988, that it had not been paid, and that the defendants were jointly and severally liable for $670 in labor and materials furnished.

Kassinger answered and filed a cross-claim against the Steimers and a third-party complaint against ReMax. It alleged that prior to execution of the first written contract, in March 1987, Kassinger had entered into an oral agreement with the Steimers under which they were to compensate Kassinger for construction of the residence on the basis of actual cost plus a fee of $10,000; but that in July 1988, after Kassinger informed the Steimers that construction costs exceeded the contract price due to many substantial changes in design during construction, they refused to comply with the oral agreement, resulting in Kassinger's bankruptcy. Kassinger alleged that the actions of the

Steimers constituted fraud, and it sought punitive and exemplary damages against the Steimers and against ReMax for the acts of its agent, Norma Steimer. Kassinger also sought a recovery against the Steimers for sums due under the cost-plus contract on theories of unjust enrichment and quantum meruit. By amendment it alleged that Norma Steimer was Kassinger's agent and breached a fiduciary duty to it.

The trial court granted the Steimers' motion for partial summary judgment on Kassinger's cross-claim as amended, ruling that they were entitled to judgment as to all issues except Kassinger's cross-claim for contribution and indemnity on the main claim. The court dismissed ReMax sua sponte.

1. The Steimers argue that Kassinger is barred from maintaining this action by Paragraph 14 of the November 1987 contract, which provides: "Entire Agreement. This Contract constitutes the sole and entire agreement between the parties hereto and no modification of this contract shall be binding unless attached hereto and signed by all parties to this contract. No representation, promise, or inducement not included in this contract shall be binding upon any party hereto." The effect of this provision is dispositive.

Although one who fraudulently induces another to enter into a contract through oral misrepresentations "cannot protect himself from answering for his fraud by placing a limitation in the contract itself, . . . yet, before such a rule comes into play, it must appear that the perpetrator of the fraud procured the defrauded party's signature to the contract itself by the perpetration of some fraudulent artifice which prevented the allegedly defrauded party from knowing the contents of the instrument itself. . . ." *Holbrook v. Capital Auto. Co.*, 111 Ga. App. 601, 603 (142 SE2d 288) (1965).

Kassinger has not alleged that through some fraudulent artifice its president was prevented from reading the contract. Kassinger has not alleged any fraud on the part of the Steimers except that their entry into the alleged oral agreement was part of a conspiracy to deprive Kassinger of cost-plus compensation. Kassinger's allegations concerning the oral agreement are contrary to a sworn statement signed by its president at the closing of the November 1987 contract in June 1988 that the purchase price for the house and lot was as stated in that agreement.

This case is similar to *Mitchell v. Head*, 195 Ga. App. 427 (394 SE2d 114) (1990), wherein the plaintiff's claim of fraud was also disposed of through the grant of the defendants' motion for summary judgment. Kassinger distinguishes it by saying that there is evidence of its detrimental reliance on the oral agreement so as to avoid the Statute of Frauds defense (OCGA § 13-5-30). The reliance is allegedly its president's purchase of the lot for the Steimers in his own name

and permitting many changes in the original design to be made during construction without cost control, allowance, or specification.

Even if that contract were enforceable albeit oral, it runs headlong into not one, but two subsequent written fixed price contracts containing merger clauses. The oral agreement, if there was one, was eliminated. Kassinger acknowledges that the first written contract, the one of March 3, 1987, was the basis for the Steimers' paying him $10,000 earnest money. The second, which was used at closing, adjusted the price by less than $200. In neither instance is there any evidence that Kassinger's president was prevented from reading the agreements by fraud on the part of either defendant. Accordingly, the trial court did not err in granting judgment to the Steimers on this claim.

If the "detrimental reliance" is on the representation of Norma Steimer that the written document dated November 1 was merely for the purpose of obtaining the long-term loan and that it would not supersede the oral agreement, there is no evidence that such representation, if made, was relied upon due to a fiduciary relationship. Such a statement, if made, relates to her capacity as a buyer and for her benefit as a buyer. Her other signature on the document, as the selling broker's associated salesperson, did not create a principal-agent relationship which would give rise to avoidance of the merger clause.

2. Citing *Stevens v. Fort Indus.*, 88 Ga. App. 584 (1) (77 SE2d 273) (1953), the Steimers point out that where there is an express contract, there can be no recovery based upon quantum meruit or unjust enrichment theories. Kassinger agrees with this position, except that it argues that the November 1987 contract was no contract at all since it was the product of fraud. For reasons given in Division 1, this argument is without merit.

The trial court did not err in dismissing ReMax, since it properly ruled that there is no direct liability from the Steimers to Kassinger on Kassinger's fraud claim, but only potential secondary liability on the claim asserted by plaintiff Seitz, and plaintiff's claim does not relate to any action taken by Norma Steimer in a representative capacity in the scope of her employment by ReMax. "[T]he court may exercise its inherent power to dismiss sua sponte. [Cits.]" *Cramer v. Southeastern Office &c. Co.*, 171 Ga. App. 514, 515 (1) (320 SE2d 223) (1984).

*Judgment affirmed. Andrews, J., concurs. Birdsong, P. J., concurs in judgment only.*

DECIDED SEPTEMBER 8, 1992.

*Rafe Banks III*, for appellant.
*Allman & Griffin, David E. Allman*, for appellees.